1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON – EUGENE DIVISION

8

| | |
|---|---|
| 9   VITEK CONSTRUCTION, LLC, | No. |
| 10          Plaintiff, | |
| 11   vs. | **DEFENDANT NAVIGATORS INSURANCE COMPANY'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1441(a)** |
| 12   NAVIGATORS INSURANCE COMPANY, a foreign corporation, | |
| 13 | |
| 14          Defendant. | |

15    TO:          The Clerk of the United States District Court for the District of Oregon – Eugene

16                   Division.

17    AND TO:      Plaintiff, and their counsel of record, Gary G. Norris.

18          Please take notice that Defendant Navigators Insurance Company (hereinafter

19    "Navigators") hereby removes to this Court the Multnomah County Court action ca Case No.:

20    14CV07180 described further below:

21                                   **I.      INTRODUCTION**

22          This action involves an insurance coverage dispute between Vitek Construction, LLC

23    (hereinafter "Vitek") and Navigators. The insurance coverage dispute involves the actual and

24

LETHER & ASSOCIATES, PLLC
1848 WESTLAKE AVE N., SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    justiciable controversy as to whether Navigators has any obligation to defend and indemnify

2    Vitek for claims asserted in the two separate Underlying Lawsuits. As set forth below, the

3    Underlying Lawsuits seek to recover from Vitek, a named defendant, damages in an amount

4    exceeding $700,000.00. Navigators has denied coverage, including any defense or indemnity

5    obligations due in part to the fact that the damage that is the subject of the Underlying Lawsuits

6    occurred after the expiration of the Navigators' policy of insurance.

7         Removal of this action is proper under 28 U.S.C. § 1332 and 28 U.S.C. § 1441. The

8    parties are diverse and the amount in controversy exceeds $75,000.00.

9                   **II.    FACTUAL BACKGROUND**

10    **A.    The Subject Action.**

11         1.    On June 19, 2014, Plaintiff Vitek filed a complaint alleging breach of an

12    insurance contract.

13         2.    In this complaint, Vitek alleges that it is entitled to defense, under the policy of

14    insurance issued by Navigators, for the lawsuit entitled *XL Specialty Insurance Company v. Vitek*

15    *Construction LLC, O'Halloran Construction and Does 1 through 25*, in Circuit Court for the

16    County of Lincoln, Oregon, case no. 140829 (hereinafter "XL Lawsuit"). **Exhibit A.**

17         3.    Further, Vitek alleges that it is entitled to defense, under the policy of insurance

18    issued by Navigators, for the lawsuit entitled *Alpha-C Incorporated a/k/a ISE Properties, Inc.*

19    *d/b/a West Coast Inn v. Larry O'Halloran Construction and Vitek Construction, LLC,* in the

20    Circuit Court for the County of Lincoln, Oregon, case no. 140772 (hereinafter "WC Lawsuit").

21    **Exhibit B.**

22         4.    Vitek has alleged that Navigators breached the insurance contract by allegedly

23    failing to defend Vitek against the claims asserted in the XL Lawsuit and WC Lawsuit

24

NOTICE OF REMOVAL - 2
S:\FILES\O'Halloran, Larry 14052\Pleadings\140623 Notice of Removal.doc

LETHER & ASSOCIATES, PLLC
1848 WESTLAKE AVE N., SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

(hereinafter collectively "Underlying Lawsuits"). According to the complaint, Navigators' alleged breach caused Vitek to retain private counsel in defense of the claims asserted in the Underlying Lawsuits.

5.    Vitek has further alleged that it has incurred to date an estimated $15,000.00 in attorneys' fees defending the Underlying Lawsuits. Further, Vitek alleges that its attorneys' fees in the Underlying Lawsuits continue to mount.

6.    Vitek requests judgment against Navigators in an amount estimated at $15,000.00 and plaintiff's costs, disbursements, and attorneys' fees pursuant to ORS 742.061.

**B.    Underlying Lawsuits.**

*1.    XL Lawsuit.*

7.    On or around March 13, 2014, XL Specialty Insurance Company (hereinafter "XL") filed suit against Vitek and Larry O'Halloran dba O'Halloran Construction LLC (hereinafter O'Halloran) in the Circuit Court for the County of Lincoln, Oregon, case no. 140829. *See* **Exhibit A.**

8.    According to the allegations in the XL Complaint, on March 12, 2012, the roof of the Inn blew off during a moderate wind event, causing damage to the structure and interior of the Inn.

9.    The XL complaint further alleges that West Coast filed an insurance claim under the insurance policy issued by XL. Specifically it is alleged that XL paid policy benefits in the amount of $624,191.93. Based on payment of these policy benefits, XL alleges that it is subrogated to the interests of West Coast.

10.    According to the allegations in the XL Complaint, the damages suffered were caused by O'Halloran and or Vitek's **a)** failure to adequately supervise the work of Vitek; **b)**

NOTICE OF REMOVAL - 3
S:\FILES\O'Halloran, Larry 14052\Pleadings\140623 Notice of Removal.doc

LETHER & ASSOCIATES, PLLC
1848 WESTLAKE AVE N., SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1    failure to install the roof materials adequately; **c)** failure to fasten the roof materials adequately

2    **d)** failure to warrant the workmanship for five years; **e)** failure to warrant the roof materials for

3    fifteen years; **f)** failure to build and/or supervise construction of the roof consistent with

4    applicable building codes; **g)** failure to provide services as expeditiously as is consistent with

5    professional skill and care and the orderly progress of the construction on the Inn; and **h)**

6    performing work in a manner that resulted in defects.

7          11.    As the subrogee of West Coast, XL has asserted the following causes of action 1)

8    breach of contract against O'Halloran; 2) Negligence against O'Halloran; and 3) Negligence

9    against Vitek.

10          12.    XL requests that the Court award judgment against O'Halloran and Vitek in the

11    sum of **$624,191.93**, plus costs, disbursements, interest, and attorneys' fees.

12          *2.*    ***West Coast Lawsuit***

13          13.    On March 11, 2014, Alpha-C Incorporated a/k/a ISE Properties, Inc. d/b/a West

14    Coast Inn (hereinafter "West Coast") filed suit against Vitek and O'Halloran, in the Circuit Court

15    for the County of Lincoln, Oregon, case no. 140772. *See* **Exhibit B.**

16          14.    The WC Complaint alleges that on November 15, 2010, West Coast, hired

17    O'Halloran to replace the roof of the Inn. It is further alleged, that O'Halloran contracted with

18    Vitek to remove the existing roof and re-roof the Inn. According to the WC Complaint the re-

19    roofing work was completed on or around February 2, 2011.

20          15.    The WC Complaint alleges that on March 14, 2012, the roof of the Inn failed,

21    causing extensive flooding and water damage throughout all three levels of the Inn. It is further

22    alleged in the WC Complaint that the water intrusion and property damage at the Inn rendered

23    portions of the Inn unusable for a period of time.

24

NOTICE OF REMOVAL - 4
S:\FILES\O'Halloran, Larry 14052\Pleadings\140623 Notice of Removal.doc

16.    The WC Complaint alleges that the roof failure was caused by O'Halloran's and or Vitek's defective construction, remolding and repair, non-compliance with industry standards, manufacturer specifications, and guidelines. It is further alleged that the claimed damage was caused by O'Halloran's and/or Vitek's (1) Failure to properly install and inspect the roof; (2) Failure to properly install and inspect the roofing materials; (3) Failure to follow the proper nail pattern when installing the roof; (4) Failure to properly nail the roofing materials to the structure; and (5) Failure to perform work in a reasonable and workmanlike manner.

17.    Based upon the following allegations, West Coast has asserted a negligence claim against Vitek and O'Halloran.

18.    West Coast requests that the Court award judgment against O'Halloran and Vitek for uninsured losses in the sum of **$110,000.00** ($5,000.00 deductible toward repair work; $20,000.00 in code improvement; and $85,000.00 in public adjuster fees). West Coast also requests post-judgment interest, costs, and disbursements.

### III.    DIVERSITY OF CITIZENSHIP

19.    Plaintiff Vitek has identified itself as an LLC licensed in the State of Oregon. All members of Vitek Construction, LLC, are citizens of the State of Oregon. As result, Plaintiff is a citizen of the State of Oregon for purposes of diversity under 28 U.S.C. § 1332.

20.    Defendant Navigators is a foreign insurer with its principal place of business in the State of New York and is incorporated in the State of New York. Navigators is a citizen of the State of New York for purposes of diversity under 28 U.S.C. § 1332.

21.    Complete diversity exists between the parties.

LETHER & ASSOCIATES, PLLC
1848 WESTLAKE AVE N., SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

## IV.   AMOUNT IN CONTROVERSY

22.    The amount in controversy in this coverage action includes, but is not limited to, the following:

- • $624,191.93 in indemnity coverage for the XL Lawsuit.

- • $110,000.00 in indemnity coverage for the WC Lawsuit.

- • $15,000.00 in estimated defense fees incurred to date for the defense of Vitek in the Underlying Lawsuits.

- • Undetermined ongoing defense fees estimated to be in excess of $100,000.00.

- • Undetermined ongoing attorneys' fees including, but is not limited to, ORS §742.061 statutory attorneys' fees in pursuing coverage. These statutory attorneys' fees are estimated to be in excess of $100,000.00.

23.    Consequently, the amount in controversy is in excess of $75,000.00, excluding interest and costs. *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202, 78 L. Ed. 267, 54 S. Ct. 133 (1933); *Hendrickson v. Xerox Corp.*, 751 F. Supp. 175, 176 (D. Or. 1990) (attorney's fees sought are to be included in calculating the jurisdictional amount for purposes of establishing the federal court's jurisdiction in a diversity case).

## V.   JURISDICTION

24.    There is complete diversity between the parties and Navigators reasonably believes Vitek to be seeking damages in excess of $75,000.00.

25.    This Court has jurisdiction over this controversy under 28 U.S.C. § 1332 and 28 U.S.C. § 1441.

NOTICE OF REMOVAL - 6
S:\FILES\O'Halloran, Larry 14052\Pleadings\140623 Notice of Removal.doc

1

## VI.    TIMELINESS

2          26.    Vitek filed its original summons and complaint on June 19, 2014. Navigators

3   accepted service on July 1, 2014. Defendant filed this Notice of Removal on July 1, 2014.

4   Removal is timely under 28 U.S.C. § 1446.

5          27.    For this reason Navigators' Notice of Removal is timely.

6   ## VII.    COPIES OF PROCESS, PLEADINGS, ORDERS, AND MOTIONS
IN STATE COURT PROCEEDINGS

7

8          28.    In accordance with 28 U.S.C. § 1446, attached to this notice as **Exhibits C**

through **E** are true and correct copies of the pleadings and documents in the State Court docket

9
as of the date of this filing. These documents are:

10
           **Exhibit C:** Plaintiff's Complaint Action on an Insurance Policy (ORS 742.061).

11
           **Exhibit D:** Defendant's Notice of Appearance.

12
           **Exhibit E:** Defendant's Notice of Removal

13

14          DATED this 3rd day of July, 2014.

15
                                        /s/ *Thomas Lether*
16                                      Thomas Lether, OSB #101708
                                        1848 Westlake Ave N., Suite 100
17                                      Seattle, WA 98109
                                        Telephone: (206) 467-5444
18                                      Facsimile: (206) 467-5544
                                        tlether@letherlaw.com
19                                      *Attorneys for Defendant The Navigators Insurance*
                                        *Company*

20

21

22

23

24
NOTICE OF REMOVAL - 7
S:\FILES\O'Halloran, Larry 14052\Pleadings\140623 Notice of Removal.doc

1

# CERTIFICATE OF SERVICE

2      The undersigned certifies that on the date below stated they caused the foregoing to be
served upon the below party(ies) at the address(es) and by the method(s) so indicated.
3

4      Gary G. Norris
       1006 NE 3rd St.
       Suite A
5      McMinnville, OR 97128
       *Attorney for Plaintiff*
6

       ___    Email
7      ___    USPS
       X      ECF Notice
8      ___    Facsimile

9      DATED this 3rd day of July, 2014.

10                                              */s/ Hugh Engel*
                                                Hugh Engel, Paralegal
11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT A

I HEREBY CERTIFY THAT THE FORG

IS A TRUE COPY OF THE ORIGINAL TH

1

2

3

4

5

6

7

8           IN THE CIRCUIT COURT OF THE STATE OF OREGON

9                  FOR THE COUNTY OF LINCOLN

10  XL SPECIALTY INSURANCE                 )  Case No.
    COMPANY,                               )
11                                         )  **COMPLAINT**
               Plaintiff,                  )
12                                         )  (Breach of Contract, Negligence)
         vs.                               )
13                                         )  Amount in Controversy:  $624,191.93
    VITEK CONSTRUCTION, LLC,               )  Filing fee due pursuant to ORS 21.160 (1)(c)
14  O'HALLORAN CONSTRUCTION, and           )
    DOES 1 through 25, inclusive,          )  **DEMAND FOR JURY TRIAL**
15                                         )
                                           )
16             Defendants.                 )

17

18       COMES NOW, Plaintiff XL Specialty Insurance Company ("XL") and alleges as

19  follows.

20                    **PARTIES AND BACKGROUND**

21                                1.

22       Plaintiff XL is a Delaware corporation with its principle place of business in Stamford

23  Connecticut.  XL is an insurance company authorized to do business and doing business in the

24  State of Oregon.  At all relevant times, XL maintained in full force and effect a policy of

25  insurance numbered 63A6000925-01 covering ISE Properties Inc., DBA: West Coast Inn ("West

26  Coast Inn").

Page 1 – COMPLAINT                                                    99 I

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon  97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

EXHIBIT 2
1 of 8

2.

West Coast Inn operates a three story Inn building, commonly known as an "EconoLodge," located at 1713 NW 21st Street, Lincoln City OR. West Coast Inn is not a party to this action.

3.

Defendant Larry O'Halloran, dba O'Halloran Construction ("O'Halloran") is an individual who resides and does business in Oregon. Plaintiff is informed and believes and based thereon alleges that O'Halloran is and at all relevant times was a contractor licensed by the state of Oregon under license number 184438.

4.

Plaintiff is informed and believes and based thereon alleges that Defendant Vitek Construction LLC ("Vitek") is a Limited Liability Company authorized to do business and doing business in Oregon. Plaintiff is informed and believes and based thereon alleges that Vitek is a contractor licensed by the state of Oregon under license number 191601.

5.

On or about November 14, 2010, West Coast Inn contracted with Defendant O'Halloran to install a new roof on the West Coast Inn building located at 1713 NW 21st Street, Lincoln City, Oregon. The Contract provided for a 15 year warranty on materials, and a five year warranty on workmanship. A true and correct copy of the Contract is attached hereto as Exhibit 1.

6.

Plaintiff is informed and believes and based thereon alleges that O'Halloran subcontracted some or all of the roofing work to Defendant Vitek.

7.

Plaintiff is informed and believes and based thereon alleges that O'Halloran and Vitek are the agents, employees, supervisors or representatives of each other.

/ / /

Page 2 – COMPLAINT

991

EXHIBIT 2
2 of 8

8.

Plaintiff is informed and believes and based thereon alleges that on or about November 16, 2010, O'Halloran and Vitek installed a Poly Vinyl Chloride (PVC) single ply roof upon the West Coast Inn building.  The installation was improper, defective, below the standard of care, and in violation of the contract provisions.  In particular, the installation utilized dissimilar and incompatible materials, the workmanship utilized inadequate fasteners and fastening methods to secure the roof to the structure, the roof was improperly installed upon the structure, allowing it to fail.

9.

On or about March 12, 2012, the roof blew off in a moderate wind, causing damage to the structure and interior of the West Coast Inn.  Plaintiff is informed and believes and based thereon alleges that local codes, to which the roof was to be installed, required that the roof be able to withstand winds of at least 105mph.  Plaintiff is informed and believes and based thereon alleges that the roof actually failed in wind speeds of less than 55.2mph.

10.

West Coast Inn suffered damages to its building and business as a result of the actions of O'Halloran and Vitek.  West Coast Inn filed an insurance claim, and XL paid policy benefits to West Coast Inn in the approximate amount of $624,191.93, a more precise sum to be presented at trial.

11.

In that XL paid policy benefits to West Coast Inn, it is subrogated to the interests of West Coast Inn, and stands in the shoes of West Coast Inn for the purposes of bringing this lawsuit.

/ / /

/ / /

/ / /

/ / /

Page 3 – COMPLAINT

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

99 f

EXHIBIT 2
3 of 8

1    **FIRST CLAIM FOR RELIEF**

2    **(Against Defendant O'Halloran)**

3    **COUNT I**

4    **(Breach of Contract)**

5        For Count I of their claim for relief against Defendant O'Halloran, Plaintiff alleges as

6    follows:

7    12.

8        Plaintiff re-alleges paragraphs one through eleven, above, as well as the Contract attached

9    hereto as Exhibit 1.

10   13.

11       Under the Contract, O'Halloran agreed to property install roofing, using the appropriate

12   standard of care, in accordance with local codes, to be permitted and inspected by the Lincoln

13   City Building Department.

14   14.

15       Under the Contract, O'Halloran agreed to warrant the roof for 15 years, and warrant

16   workmanship for five years.

17   15.

18       Plaintiff is informed and believes and based thereon alleges that West Coast Inn paid

19   O'Halloran all amounts due under the contract, and did not breached the contract in any manner.

20   16.

21       O'Halloran breached the contract in the following respects:

22       a)    By failing to adequately supervise the work of Vitek;

23       b)    By failing to install the roof materials adequately;

24       c)    By failing to fasten the roof materials adequately;

25       d)    By failing to warrant the workmanship for five years;

26       e)    By failing to warrant the roof materials for 15 years;

Page 4 – COMPLAINT

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

991

EXHIBIT 2
4 of 8

1      f)    By failing to build and/or supervise construction of the roof consistent with

2           applicable building codes;

3      g)    By failing to provide his services as expeditiously as is consistent with

4           professional skill and care and the orderly progress of the construction on the

5           West Coast Inn; and

6      h)    By performing his work in a manner that resulted in the defects alleged above.

7                              **COUNT II**

8                              **(Negligence)**

9      For Count II of its claim for relief against Defendant O'Halloran, Plaintiff alleges as

10  follows.

11                              17.

12      Plaintiff re-alleges paragraphs one through sixteen, above, as well as the Contract

13  attached hereto as Exhibit 1.

14                              18.

15      As a result of his role in providing services to West Coast Inn, and independent of his

16  duties under any agreements, O'Halloran owed West Coast Inn a duty to perform his work in a

17  good and workmanlike manner, in accordance with industry standards and codes, as well as local

18  building codes.

19                              19.

20      O'Halloran breached his duties to West Coast Inn in respects alleged in paragraph 16

21  above in a manner that resulted in physical damage to property and other damages.

22                              20.

23      Plaintiff paid policy benefits to West Coast Inn as a result of the damages caused by

24  defendants, and each of them. In so doing, Plaintiff became the subrogee of West Coast Inn and

25  stands in its shoes with regard to recovering damages to the extent of policy benefits paid.

26  / / /

Page 5 – COMPLAINT

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

991

EXHIBIT 2
5 of 8

1

**SECOND CLAIM FOR RELIEF**

2

**(Against Vitek Construction LLC)**

3

**COUNT I**

4

**(Negligence)**

5

For Count II of its claim for relief against Defendant Vitek, Plaintiff alleges as follows.

6

21.

7

Plaintiff re-alleges paragraphs one through twenty, above, as well as the Contract

8

attached hereto as Exhibit 1.

9

22.

10

As a result of its role in providing services to West Coast Inn under contract with

11

O'Halloran, and independent of its duties under any agreements, Vitek owed West Coast Inn a

12

duty to perform its work in a professional manner, in accordance with industry standards and

13

codes, as well as local building codes.

14

23.

15

Vitek breached its duties to West Coast Inn in respects alleged in paragraph 16 (b)

16

through (h) in a manner that resulted in physical damage to property and other damages.

17

24.

18

Plaintiff paid policy benefits to West Coast Inn as a result of the damages caused by

19

defendants, and each of them. In so doing, Plaintiff became the as subrogee of West Coast Inn

20

and stands in its shoes with regard to recovering damages to the extent of policy benefits paid.

21

/ / /

22

/ / /

23

/ / /

24

/ / /

25

/ / /

26

/ / /

Page 6 – COMPLAINT

99 I

EXHIBIT 2
6 of 8

1    WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants as

2  follows:

3      1.    For the sum of $624,191.93 and for other damages representing policy benefits

4            paid to date, and which may increase with the passage of time;

5      2.    For Plaintiff's costs, disbursements, and interest;

6      3.    For Plaintiff's reasonable attorney fees allowed under ORS 20.096 or as otherwise

7            allowed by contract or law; and

8      4.    For such other relief the Court deems just and equitable.

9    DATED this 13th day of March, 2014.

10                          THENELL LAW GROUP, P.C.

11

12

13         By:  _Maribeth T. Bomier #052060_

14              Daniel E. Thenell, OSB #971655
                Email: dan@thenelllawgroup.com
15              Of Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

Page 7 – COMPLAINT

99 [

EXHIBIT 2
7 of 8

11/24/2010                          Gmail - new roof contract

# Gmail

*Sergio (sub)*

Scott Jones <iamforeverblessed@gmail.com>
503-857-7355

## new roof contract (sub)

1 message

**ohalloranlk@frontier.com** <ohalloranlk@frontier.com>        **Mon, Nov 22, 2010 at 6:34 PM**
To: iamforeverblessed@gmail.com

O'Halloran Construction

*Revised Roof Est. #27,800.00*    revised 11-22-10

Larry O'Halloran
317 SW Filbert St.
McMinnville, Or. 97128
CCB# 184438
971-241-9360

*clm. 2012-8036-6*

Project Description and invoice:  West Coast Inn
                                   1713 NW 21 Street, Lincoln City Or 97367

*Remove all 3 layers of existing roofing. Dispose of all debris.

* Re-roof with Versico PVC single ply membrane, (60 mill) replace all
  vents with new roof vents.

* All work will be approved and inspected by Lincoln City Building Department.

* Your new roof comes with a 15 year Manufacturers Warranty; and a 5 year Warranty on
  workmanship.
* The PVC membrane comes in 6 ft. and 10 ft. rolls. We always minimize our seams, and will do
  so on your project as well.
* All seaming is self adhesive and will be torched together.
* Curbing will be built from 2x4's and 1/2 inch plywood, nailed over the existing roof sheeting  to
  help creating proper drainage.
* Versico material has already been ordered and will be delivered within a week.
* We will watch the weather and will begin the project when there is a 3 day window of good
  weather.
* Completion time is about 5 working days from beginning of project.
* Due to the rainy, winter season and the condition of the existing roof, "Time is of the Essence"
  the (weather permitting) project must be completed no later than December 15th to avoid more
  damage to building.
* We don't expect any additional requirements that could affect price due to Lincoln City
  Building Department.
* Contract and any changes on part of West Coast Inn, and O'Halloran Construction must be
  made in writing by both In-Joo Cho and Larry O'Halloran.

Total price  $ 27,800.00

Down payment received on 11-18-10      $ 12,350.00

Balance due upon completion  $ 15,450.00

Thank you, Larry O'Halloran

https://mail.google.com/mail/u/0/?ui=...

Exhibit 1    1/2
Page 1 of 1
EXHIBIT 2
8 of 8

# EXHIBIT B

CIRCUIT COURT

FILED_____ RECEIVED ✓

MAR 1 1 2014

AT_____O'CLOCK_____M
BY_____

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LINCOLN

| | |
|---|---|
| ALPHA-C INCORPORATED a/k/a ISE PROPERTIES, INC. d/b/a WEST COAST INN, | Case No. 140772 |
| | COMPLAINT & JURY TRIAL DEMAND (Negligence) |
| Plaintiff, | Prayer: $110,000.00 |
| vs. | NOT SUBJECT TO MANDATORY ARBITRATION |
| LARRY O'HALLORAN CONSTRUCTION, LLC, an Oregon limited liability corporation, VITEK CONSTRUCTION, LLC, an Oregon limited liability corporation, | Fee Authority: ORS 21.160(1)(C) |
| Defendants. | |

For its Complaint, Plaintiff alleges as follows:

1.

At all material times herein, Plaintiff was an Oregon Corporation with its principal place of business in Lincoln County, Oregon, that owned and operated an Econo Lodge hotel located in Lincoln City, Oregon (referred to hereafter as the "Econo Lodge").

2.

At all material times herein, Defendant Larry O'Halloran Construction, LLC ("O'Halloran"), was an Oregon limited liability corporation based in McMinnville, Oregon, and a licensed Oregon contractor. Defendant O'Halloran performed and/or controlled some or all of the remodeling and construction work at the Econo Lodge that forms the basis of this Complaint.

3.

At all material times herein, Defendant Vitek Construction, LLC ("Vitek"), was an Oregon limited liability corporation based in McMinnville, Oregon, and a licensed Oregon

Page 1 - COMPLAINT

EXHIBIT 3
1 of 5

WHIPPLE & DUYCK, P.C.
Attorneys at Law
1500 SW First Ave  Suite 1170
Portland, OR 97201
503 222 6004
503 222 6191

1    contractor.  Defendant Vitek performed and/or controlled some or all of the remodeling and

2    construction work at the Econo Lodge that forms the basis of this Complaint.

3                                             4.

4          All or substantially all of the acts and omissions alleged herein occurred in Lincoln City,

5    Oregon.

6                                             5.

7          On or around November 15, 2010, Plaintiff hired Defendant O'Halloran to replace the

8    roof at its Econo Lodge hotel.

9                                             6.

10         Thereafter Defendant O'Halloran and Defendant Vitek, a subcontractor, removed the

11   Econo Lodge's existing roof, and re-roofed the Econo Lodge.

12                                            7.

13         Defendants completed their re-roofing work on or around February 2, 2011.

14                                            8.

15         On or around March 14, 2012, the roof of the Econo Lodge failed, causing extensive

16   flooding and water damage throughout all three levels of the Econo Lodge.

17                                            9.

18         Defendants were responsible for the quality of all labor and materials used in the

19   construction and re-roofing at the Econo Lodge and for the work their agents

20                                            10.

21         Defendants were responsible to ensure that the Econo Lodge was re-roofed so as to be

22   free from defects and in a manner so as not to leak, fail or cause property damage.  Defendants

23   were also responsible for ensuring the Econo Lodge was remodeled and repaired in a

24   weatherproof and workmanlike manner.

25   / / /

26   / / /

Page 2 -    COMPLAINT                   EXHIBIT 3                    WHIPPLE & DUYCK, P.C.
                                         2 of 5                        Attorneys at Law
                                                                 1500 SW First Ave., Suite 1170
                                                                       Portland, OR 97201
                                                                         503 222 6004
                                                                         503 222 6191

11.

The resultant roof failure, leaks, water intrusion and property damage at the Econo Lodge are the result of Defendants' defective construction, remodeling and repair, and non-compliance with industry standards, manufacturer specifications and guidelines, and other applicable specifications, including, but not limited to, the following:

    1.  Failure to properly install and inspect the roof;

    2.  Failure to properly install and inspect the roofing materials;

    3.  Failure to follow the proper nail pattern when installing the roof;

    4.  Failure to properly nail the roofing materials to the structure;

    5.  Failure to perform work in a reasonable and workmanlike manner;

    6.  Such other specifications of negligence to be alleged upon completion of discovery.

12.

The roof failure, leaks, water intrusion and property damage at the Econo Lodge caused by the above defects rendered portions of the Econo Lodge unusable for a period of time. Extensive repairs were necessary to correct the roof failure, leaks, water intrusion and property damage and to minimize the real, substantial and imminent risk of further property damage and loss.

13.

As a result and the conduct set forth above, Plaintiff suffered substantial uninsured losses, and is entitled to recover damages in an amount to be proven at trial and currently estimated to be $110,000 in the following specifics: payment of a $5,000 deductible towards repair work; payment for "code improvement" repairs estimated at $20,000; public adjuster costs estimated at $85,000.

14.

Plaintiff is also entitled to post judgment interest at a rate of nine percent (9%) per annum on any award.

EXHIBIT 3
3 of 5

WHIPPLE & DUYCK P.C.
Attorneys at Law
1500 SW First Ave. Suite 1170
Portland, OR 97201
503 222 6004
503 222 6191

## FIRST CLAIM FOR RELIEF

### (Negligence – All Defendants)

15.

Plaintiff re-alleges and incorporates paragraphs 1 through 12 above as if fully set forth herein.

16.

Each of the Defendants had an independent duty to ensure that the Econo Lodge was remodeled and re-roofed in a weatherproof, workmanlike manner, in compliance with all industry and manufacturer standards and specifications and to ensure that the Econo Lodge roof did not fail, leak, or otherwise cause property damage.

17.

Defendants knew, or reasonably should have known, that failure to use reasonable care and comply with applicable plans, industry and manufacturer standards and specifications in overseeing, directing and undertaking the re-roofing and repair of the Econo Lodge would cause damage to the Econo Lodge as described in paragraphs 11 through 12, supra.

18.

Plaintiff relied on Defendants to perform their duties with reasonable care, and in compliance with all applicable plans, regulations and industry and manufacturer standards and specifications.

19.

Defendants breached their duty to Plaintiff by failing to use reasonable care and failing to comply with all applicable plans and industry and manufacturer standards and specifications in overseeing, directing and undertaking the re-roofing and repair of the Econo Lodge.

20.

Defendants performed their work negligently by the conduct described in paragraph 11 above.

Page 4 -    COMPLAINT

EXHIBIT 3
4 of 5

WHIPPLE & DUYCK, P.C
Attorneys at Law
1500 SW First Ave., Suite 1170
Portland, OR 97201
503 222 6004
503 222 6191

21.

As a foreseeable, direct and proximate result of Defendants' negligence, Plaintiff has suffered damages and is entitled to recover those damages and interest as set forth above in paragraphs 13 through 14.

WHEREFORE, Plaintiff prays for the following relief:

A.   Economic damages in an amount to be proven at trial not to exceed $110,000;

B.   Interest at a rate of nine percent (9%) per annum;

C.   Plaintiff's costs and disbursements incurred herein; and

D.   For any other appropriate relief that the Court deems just and equitable.

DATED this _11_ day of March, 2014.

WHIPPLE & DUYCK, P.C.

By: _____
    Daniel L. Duyck, OSB #972529
    dduyck@whippleduyck.com
    Eric D. Wilson, OSB#044556
    ewilson@whippleduyck.com
    Of Attorneys for Plaintiff

    Trial Attorney:  Daniel L. Duyck

EXHIBIT 3
5 of 5

WHIPPLE & DUYCK, P C
Attorneys at Law
1500 SW First Ave   Suite 1170
Portland  OR  97201
503 222 6004
503 222 6191

# EXHIBIT C

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| VITEK CONSTRUCTION, LLC, | ) Case No.: |
| | ) |
| Plaintiff, | ) COMPLAINT |
| | ) |
| vs. | ) Action on an insurance policy (ORS 742.061). |
| | ) Breach of Contract |
| | ) |
| NAVIGATORS INSURANCE COMPANY | ) (Subject to Mandatory Arbitration) |
| | ) |
| Defendant. | ) |
| | ) |

COMES NOW Plaintiff, Vitek Construction, LLC, by and through its attorney, Gary G. Norris, and for its Complaint against Defendant Navigators Insurance Company, alleges as follows:

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

1.

At all material times Plaintiff was an Oregon LLC doing business and licensed to do business as a construction contractor.

2.

At all material times Defendant was a New York corporation authorized to do business and doing business in the State of Oregon as a commercial insurer.

3.

In return for premium paid, Navigators issued to Plaintiff policy number 3610122439. A copy of the policy is attached as Exhibit 1 to this Complaint. The dates of coverage for Vitek under the subject policy were August 5, 2010 to August 5, 2011.

LAW OFFICE OF
Gary G. Norris
1006 NE 3rd St. Suite A • McMinnville, Oregon 97128
Telephone: (503) 472-3770

4.

Plaintiff has been named as a Defendant in two separate lawsuits filed in Lincoln County Circuit Court, as follows, *XL Specialty Insurance Company v. Vitek Construction, LLC, O'Halloran Construction, and Does 1 through 25, inclusive.* Lincoln County Court Case No.: 140829 and *Alpha-C Incorporated a/k/a ISE Properties, Inc. d/b/a West Coast Inn v. Larry O'Halloran Construction and Vitek Construction, LLC* Lincoln County Court Case No.: 140772. Copies of the Complaints in each case are attached as Exhibits 2 and 3 respectively. Each of the lawsuits contain allegations that Vitek's work was faulty, and caused consequential damage to the property of the respective Plaintiffs in those lawsuits. The complaints each allege that Plaintiff's work was performed within the policy period.

5.

More than six months before the present lawsuit was filed, Plaintiff submitted proof of loss to Navigators and in fact such proof of loss was submitted to Navigators before Exhibits 2 or 3 were filed.

6.

The allegations in each of the Complaints attached trigger an obligation on Navigators part to defend Vitek in each of the suits. Despite proof of loss, however, as mentioned above, Navigators has failed and refused to defend, which constitutes a material breach of the contract of insurance referenced above. As a direct and substantial result of Navigators' breach of the contract of insurance, Plaintiff has been required to retain personal counsel to defend the lawsuits, all to Plaintiff's damage currently estimated at $15,000.00. Due to Navigators continued material breach of the contract, Plaintiff's damages for defense costs and attorneys

LAW OFFICE OF
**Gary G. Norris**
1006 NE 3rd St. Suite A • McMinnville, Oregon 97128
Telephone: (503) 472-3770

1  fees continue to mount.  Plaintiff will file a supplemental complaint prior to arbitration to fully

2  set forth the amount of those damages as of the date of arbitration.

3                                                  7.

4      Pursuant to ORS 742.061, Plaintiff is entitled to recover its reasonable costs,

5

6  disbursements and attorneys fees for proceeding with this lawsuit, as Vitek has made no

7  tender.

8      WHEREFORE, Plaintiff prays for relief as follows:

9      1.   For judgment against Navigators Insurance in an amount currently estimated at

10

11           $15,000.00; and

12     2.   For Plaintiff's costs, disbursements and attorneys fees pursuant to ORS 742.061.

13

14  DATED this _____ day of June, 2014.

15                                         Law Office of Gary G. Norris

16

17

18                                         Gary G. Norris, OSB #823552
                                           Attorney for Plaintiff Vitek Construction, LLC
19

20

21

22

23

24

25

26

27

Page 3 of 3     COMPLAINT

EXHIBIT 1
1 of 54

ENDORSEMENT
NO. _____01_____

## NAVIGATORS INSURANCE COMPANY

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | INSURED | PRODUCER AND CODE |
|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | | |
| | | | | A.M. | VITEK CONSTRUCTION, LLC | HA069 BUILDERS & TRADESMEN'S INS SVC |
| 36-10122439 | 08 | 05 | 10 | X | | |

PER REQUEST FORM CG 2134NH (01/87) EXCLUSION-DESIGNATED WORK HAS BEEN ADDED
ONTO THE POLICY ADDING THE B LICENSE EXCLUSION EFFECTIVE 08/05/2010

MJI, INC - HA069

DATE    09-16-10
        MJD

*Lisa Erickson*
Authorized Representative

-INSURED-                                SDBOWMAN

EXHIBIT 1

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Policy No. 36-10122439

Effective Date: 08-05-2010
12:01 A.M. Standard Time

| LIMITS OF INSURANCE | | |
|---|---|---|
| General Aggregate Limit (Other Than Products--Completed Operations) | $ 2,000,000 | |
| Products--Completed Operations Aggregate Limit | $ 2,000,000 | |
| Personal and Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Fire Damage Limit | $ 50,000 | Any One Fire |
| Medical Expense Limit | $ 5,000 | Any One Person |

**LOCATION OF PREMISES**

Location of All Premises You Own, Rent or Occupy:
    400 SE ALETHEA WAY,  MCMINNVILLE,  OR  97128

**PREMIUM**

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING THREE STORIES IN HEIGHT | 91340 | 7.500 (p) | INCL | 39.511 | INCL | 296 |
| SIDING INSTALLATION | 98967 | 17,500 (p) | INCL | 58.709 | INCL | 1,027 |
| CONTRACTORS-SUBCONTRACT WORK-IN CONNECTION WITH CONSTRUCTION, RECON-STRUCTION, REPAIR OR ERECTION OF BUILDINGS | 91585 | 10,000 (c) | INCL | 6.587 | INCL | 66 |
| | | | | Total Advance Premium | | 1,389 |

| | | |
|---|---|---|
| (a) area - per 1000 sq.ft. | (m) admissions - per 1000 | (e) each |
| (s) gross sales - per $1000 | (p) payroll - per $1000 | (c) total cost - per $1000 |
| | | (u) units |

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of Issue:
CG2134NH(01/87)

*Information Omitted if and an endorsement in the policy.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Page.
Common Policy Conditions, Coverage Part Coverage Forms and any other applicable forms and endorsements.

S2000 (8/91)

-INSURED-

EXHIBIT 1
3 of 54

POLICY NUMBER:                                        COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

CONSTRUCTION OF NEW HOMES AS A GENERAL CONTRACTOR OR DEVELOPER.

(If no entry appears above. information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule

# COMMERCIAL LINES POLIC
# COMMON POLICY DECLARATIONS
# NAVIGATORS INSURANCE COMPANY

6 INTERNATIONAL DRIVE - SUITE 100
RYE BROOK, NY 10573

NEW
Renewal of Number

**Policy No. 36-10122439**

Named Insured and Mailing Address
(No., Street, Town or City, County, State, Zip Code)

  VITEK CONSTRUCTION, LLC
  400 SE ALETHEA WAY
  MCMINNVILLE, OR 97128

Producer and Mailing Address
(No., Street, Town or City, County, State. Zip Code)
  BUILDERS & TRADESMEN'S INS SVC
  6610 SIERRA COLLEGE BLVD
  ROCKLIN, CA 95677
  TEL: (877) 649-6682

Tax State OR

Policy Period:    From  08-05-2010  to  08-05-2011    at 12:01 A.M. Standard Time
    at your mailing address shown above.

Form of Business: Limited Liability Corporation

Business Description: CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT
               EXCEEDING THREE
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU
TO PROVIDE THE INSURANCE STATED IN THIS POLICY

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $ Not Covered |
| Commercial General Liability Coverage Part | $ 1,389.00 |
| | $ |
| | $ |
| | $ |
| TOTAL ADVANCE PREMIUM | $ 1,389.00 |
| Other Charges:    Policy Fee | $ 150.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| TOTAL $ | 1,539.00 |

Form(s) and Endorsement(s) made a part of this policy at time of issue *:
ANF159 (06/96), ANF177 (01/08), IL0017 (11/98), IL0021 (09/08), IL0279 (09/08), S2000 (3/91)

* Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned: 08-09-10    MJD    By
                                          Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S)
AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1983, 1984

COM 0100 00 05/2006              - INSURED -

EXHIBIT 1
5 of 54

## SERVICE OF SUIT

It is agreed that service of process in suit may be made upon

       Navigators California Insurance Services
       Attn: Noel Higgitt
       433 California St., Suit 820
       San Francisco, CA 94104

and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that they will enter a general appearance upon the Company behalf in the event such a suite shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true an lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ANF 159 (06/96)

## EXHIBIT 1
6 of 54
## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Acceptance or Rejection of Terrorism Insurance Coverage

I hereby elect to purchase terrorism coverage for a prospective premium of $ 100.00
I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

_____
Policyholder/Applicant's Signature

NAVIGATORS INSURANCE COMPANY
Insurance Company

_____
Print Name

36-10122439
Policy Number

_____
Date

ANF 177 01 08

© 2007 National Association of Insurance Commissioners

EXHIBIT 1
7 of 54

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

EXHIBIT 1
8 of 54

IL 00 21 09 08

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
(Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property

            © ISO Properties, Inc. 2007

EXHIBIT 1
10 of 54

IL 02 79 09 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OREGON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following.

  **2.** If this policy has been in effect for:

    **a.** Fewer than 60 days and is not a renewal policy, we may cancel for any reason.

    **b.** 60 days or more or is a renewal policy we may cancel only for one or more of the following reasons.

      **(1)** Nonpayment of premium;

      ~~**(2)** Fraud or material misrepresentation~~ made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

      **(3)** Substantial increase in the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to rules, legislation or court decision;

      **(4)** Failure to comply with reasonable loss control recommendations.

      **(5)** Substantial breach of contractual duties, conditions or warranties;

      **(6)** Determination by the commissioner that the continuation of a line of insurance or class of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Oregon or any other state; or

      **(7)** Loss or decrease in reinsurance covering the risk.

    **c.** 60 days or more or is a renewal policy, we may cancel for any other reason approved by the commissioner by rule, but only with respect to insurance provided under the following:

      **(1)** A package policy that includes commercial property and commercial liability insurance.

      **(2)** Commercial Automobile Coverage Part;

      **(3)** Commercial General Liability Coverage Part;

      **(4)** Commercial Property Coverage Part – Legal Liability Coverage Form.

      **(5)** Commercial Property Coverage Part – Mortgageholders Errors And Omissions Coverage Form;

      **(6)** Employment-related Practices Liability Coverage Part;

      **(7)** Farm Coverage Part – Farm Liability Coverage Form;

      **(8)** Liquor Liability Coverage Part.

      **(9)** Products/Completed Operations Liability Coverage Part; or

      **(10)** Medical Professional Liability Coverage Part.

© ISO Properties, Inc., 2007

EXHIBIT 1

11 of 54

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is amended by the addition of the following:

   **3.** We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

**C.** The following is added to the **Cancellation** Common Policy Condition:

   **7. Number Of Days' Notice Of Cancellation:**

     **a.** With respect to insurance provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least 10 working days after the first Named Insured receives our notice.

     **b.** With respect to insurance other than that provided under **2.c.(1)** through **(10)** above, cancellation will not be effective until at least

       **(1)** 10 days after the first Named Insured receives our notice, if we cancel for nonpayment of premium; or

       **(2)** 30 days after the first Named Insured receives our notice, if we cancel for any other reason.

**D.** Paragraph **6.** of the **Cancellation** Common Policy Condition does not apply.

**E.** The following are added and supersede any provision to the contrary:

   **1. Nonrenewal**

   We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

     **a.** Expiration date of the policy; or

     **b.** Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 45 days after the first Named Insured receives our notice.

**2. Mailing Of Notices**

   **a.** If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice on the third calendar day after the date of the certificate of mailing.

   **b.** The following provision applies with respect to coverage provided under the Farm Coverage Part:

   If the first Named Insured has affirmatively consented to our use of an electronic record to deliver notice of cancellation or nonrenewal and has not withdrawn such consent, then the electronic record delivering notice of cancellation or nonrenewal satisfies the requirement that the notice of cancellation or nonrenewal be provided, or made available, to the first Named Insured in writing if we send the first Named Insured the electronic record with a request for a return receipt and we receive the return receipt. If we do not receive the return receipt, we may cancel or nonrenew the policy only after providing or delivering the notice of cancellation or nonrenewal to the first Named Insured in writing, subject to Paragraph **2.a.** above.

EXHIBIT 1

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

Policy No. 36-10122439

Effective Date: 08-05-2010
12:01 A.M. Standard Time

### LIMITS OF INSURANCE

| | | | |
|---|---|---|---|
| General Aggregate Limit (Other Than Products--Completed Operations) | $ | 2,000,000 | |
| Products--Completed Operations Aggregate Limit | $ | 2,000,000 | |
| Personal and Advertising Injury Limit | $ | 1,000,000 | |
| Each Occurrence Limit | $ | 1,000,000 | |
| Fire Damage Limit | $ | 50,000 | Any One Fire |
| Medical Expense Limit | $ | 5,000 | Any One Person |

### LOCATION OF PREMISES

Location of All Premises You Own, Rent or Occupy:
    400 SE ALETHEA WAY, MCMINNVILLE, OR  97123

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| CARPENTRY-CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING THREE STORIES IN HEIGHT | 91340 | 7,500 (p) | INCL | 39.511 | INCL | 296 |
| SIDING INSTALLATION | 98967 | 17,500 (p) | INCL | 58.709 | INCL | 1,027 |
| CONTRACTORS-SUBCONTRACT WORK-IN CONNECTION WITH CONSTRUCTION, RECON-STRUCTION, REPAIR OR ERECTION OF BUILDINGS | 91585 | 10,000 (c) | INCL | 6.587 | INCL | 66 |

Total Advance Premium   1,389

| | | |
|---|---|---|
| (a) area - per 1000 sq.ft. | (m) admissions - per 1000 | (e) each | (u) units |
| (s) gross sales - per $1000 | (p) payroll - per $1000 | (c) total cost - per $1000 | |

### FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
ANF-BT158(06/08), ANF-ES043 (5/06), ANF-ES130(06/98), ANF-ES182(07/05), ANF-ES175(03/02), ANF032 (07/05)
ANF150 (07/05), ANF161 (03/97), ANF164 (07/05), ANF168 (07/99), ANF170 (04/00), ANF172 (01/01), CG0001 (12/04)
CG0067 (03/05), CG0300 (01/96), CG2134CM 01 87, CG2147 (07/98), CG2154A (07/05), CG2243 (07/98), CG2426 (07/04)
IL0142 (09/08), CG2173 (01/08), CG2134BL 01 87, CG2134NR 01 87

*Information Corrected, if not an appearance in the policy.*

    THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
    This page alone does not provide coverage and must be attached to a Commercial Lines Common Policy Declarations Page.
    Common Policy Conditions, Coverage Part Coverage Forms, and any other applicable forms and endorsements.

S2000 (8/91)                              -INSURED-

EXHIBIT 1
13 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - CONDOMINIUMS, TOWNHOUSES, TIMESHARES, AND TRACTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising out of any work involving, related to, or performed about the premises of:

1.  Condominiums or townhouses;

2.  Any location which has been or becomes converted into condominiums or townhouses, regardless of whether:
    a.  any insured had involvement in the conversion;
    b.  any insured had knowledge of the conversion;
    c.  the conversion is prior to or subsequent to any insured's work at the location

3.  Timeshare development; or

4.  Any project or premise on which more than 10 houses have been built or are in any stage of development, planning, or construction

This exclusion does not apply to:

1.  Non-Structural remodeling or repair of the dwelling unit for the dwelling unit owner on premises described in paragraphs 1, 2, or 3 above; or

2.  Remodeling or additions to a single house in a development described in paragraph 4 above.

3.  Maintenance, service, or non-structural repairs to common areas of a completed and occupied development or project, except any common areas which are part of any building containing the dwelling units

4.  Work done on a new single custom home for an individual in a development described in paragraph 4 above.

ANF-BT 158 (06/2008)

# EXHIBIT 1
# BLANKET ADDITIONAL INSUREDS—
# OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
SCHEDULE

| Policy Number:  36-10122439 | Endorsement Effective: 08/05/10 12:01 a.m. |
|---|---|
| Named Insured<br>VITEK CONSTRUCTION, LLC | Countersigned By:<br>*Lisa Erichson* |

## SCHEDULE

Name of Person or Organization:

Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy.

Location:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for your acts or omissions arising out of your ongoing operations performed for that insured.

B. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

2. **Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. The words "you" and "your" refer to the Named Insured shown in the Declarations.

D. "Your work" means work or operations performed by you or on your behalf; and materials, parts or equipment furnished in connection with such work or operations.

Primary Wording
If required by written contract or agreement: Such insurance as is afforded by this policy shall be primary insurance, and any insurance or self-insurance maintained by the above additional insured(s) shall be excess of the insurance afforded to the named insured and shall not contribute to it.

Waiver of Subrogation
If required by written contract or agreement: We waive any right of recovery we may have against an entity that is an additional insured per the terms of this endorsement because of payments we make for injury or damage arising out of "your work" done under a contract with that person or organization.

ANF - ES 043 (5/2006)

EXHIBIT 1

15 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### INDEPENDENT CONTRACTORS

The insured hereby represents and warrants that:

1.  Commercial general liability insurance coverage for "bodily injury" and "property damage" will be required for all contractors and sub-contractors performing work or operations on behalf of any insured; and the insured shall obtain certificates of insurance from all contractors and sub-contractors performing work or operations on behalf of any insured. Such insurance will be in effect during the duration of the time work is being performed on behalf of any insured; and that

2.  The insured will be named as an "additional insured" on the required coverages described in Item 1. above and that

3.  The minimum limits and coverages thus required of all contractors and sub-contractors performing work or operations on behalf of any insured shall be:

| REQUIRED LIMIT | COMMERCIAL GENERAL LIABILITY FORM |
| --- | --- |
| $  1,000,000 | General Aggregate |
| $  1,000,000 | Products/Completed Operations Aggregate |
| $  1,000,000 | Each Occurrence; |

4.  Any coverage that might otherwise exist under this policy for claims against any insured based on work done for or on behalf of any insured by a contractor or subcontractor is expressly excess over, and will not contribute with, the insurance required under this endorsement. No duty to defend or indemnify any insured will exist under this policy for any claims that are or should be covered under the policies required of contractors and subcontractors under this endorsement will exist absent exhaustion of all such contractors' and subcontractors' policies.

The insured understands that this insurance policy has been issued upon these representations and warranties.

ANF-ES 130 (06/98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

Insuring Agreement under **SECTION I**., Coverage A., paragraph **b.(3)**, paragraph **c**., and paragraph **d., (1), (2), (3)** are replaced by the following:

This insurance does not apply to any damages because of or related to "bodily injury", "property damage", or "personal and advertising injury:"

c.

(1)   which first existed, or alleged to have first existed, prior to the inception date of this Policy; or

(2)   which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury", "property damage", or "personal and advertising injury" continues during this policy period; or

(3)   which were caused, or are alleged to have been caused, by the same condition which resulted in "bodily injury", "property damage", or "personal and advertising injury" which first existed prior to the inception date of this Policy.

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage", or "personal and advertising injury" to which this endorsement applies.

ANF-ES 162 (7/05)

EXHIBIT 1
17 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### DESIGNATED WORK EXCLUSION – E.I.F.S.

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that this insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" as respects the following:

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2. Any work or operations with respect to any exterior component, fixture or feature of any structure if any "exterior insulation and finish system" is used on any part of that structure.

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene or other materials, and
2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and
3. A reinforced base coat, and
4. A finish coast providing surface texture and color.

ANF-ES 175 (3/2002)

EXHIBIT 1
18 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION – EARTH MOVEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" which was directly or indirectly, based upon or contributed to in whole or in part, arising out of, resulting from, or in any matter related to "earth movement" whether or not any such "earth movement" is combined with any other causes.

The term "earth movement" includes, but is not limited to, earthquake, landslide, subsidence, mud flow, sinkhole, erosion, or the sinking, rising, shifting, expanding, vibrating or contracting of earth or soil, or any other movement of land, soil or earth.

ANF 032 (07/2005)

EXHIBIT 1

19 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN COMMERCIAL GENERAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.   Exclusion 2.f of **SECTION I - COVERAGES,
COVERAGE A. BODILY INJURY AND PROPERTY
DAMAGE LIABILITY** is replaced by the following:

Pollution
(1)   "Bodily injury" or "property damage" which
would not have occurred in whole or part but for
the actual, alleged or threatened discharge,
dispersal, seepage, migration, release or
escape of "pollutants" at any time.

This exclusion does not apply to:
(a)   "Bodily injury" if sustained within a
building which is or was at any time
owned or occupied by, or rented or
loaned to, any insured and caused by
smoke, fumes, vapor or soot produced by
or originating from equipment that is used
to heat, cool or dehumidify the building, or
equipment that is used to heat water for
personal use, by the building's occupants
or their guests; or
(b)   "Bodily injury" or "property damage"
arising out of heat, smoke or fumes from
a "hostile fire" unless that "hostile fire"
occurred or originated:
    (i)   At any premises, site or location
which is or was at any time used by
or for any insured or others for the
handling, storage, disposal,
processing or treatment of waste; or
    (ii)   At any premises, site or location on
which any insured or any
contractors or subcontractors
working directly or indirectly on any
insured's behalf are performing
operations to test for, monitor, clean
up, remove, contain, treat, detoxify,
neutralize or in any way respond to,
or assess the effects of,
"pollutants".
(2)   Any loss, cost or expense arising out of any:
(a)   Request, demand, order or statutory or
regulatory requirement that any insured or

others test for, monitor, clean up, remove,
contain, treat, detoxify or neutralize, or in
any way respond to, or assess the effects
of, "pollutants"; or
(b)   Claim or suit by or on behalf of a
governmental authority for damages
because of testing for, monitoring,
cleaning up, removing, containing,
treating, detoxifying or neutralizing, or in
any way responding to, or assessing the
effects of, "pollutants".

B.   **SECTION I - COVERAGES, COVERAGE B.
PERSONAL AND ADVERTISING INJURY
LIABILITY** is amended to add the following to
paragraph 2.

This insurance does not apply to:

"Personal and advertising injury" to an "employee" of
the insured, arising out of and in the course of
employment by the insured.

C.   **SECTION III - LIMITS OF INSURANCE** is amended
to add the following to paragraph 5.:

The Each Occurrence Limit is the most we will pay
regardless of the number of policy(ies) issued to an
insured by us which may apply to the same
"occurrence".

D.   Additional Exclusions applicable to **COVERAGE A.
BODILY INJURY AND PROPERTY DAMAGE
LIABILITY** and **COVERAGE B. PERSONAL AND
ADVERTISING INJURY LIABILITY**

This insurance does not apply to:

1.   Punitive or Exemplary Damage

If a "suit" is brought against the insured for
damages covered by this policy seeking both

ANF 150 (07/05)                    Page 1 of 4

EXHIBIT 1
20 of 54

compensatory and punitive or exemplary damages, we will afford a defense to such action. We will not have an obligation to pay for any costs, interests or damages attributable to punitive or exemplary damages. This exclusion does not apply in any state where such endorsement is expressly prohibited by state law or insurance department regulations.

2.  Asbestos

"Bodily injury", "property damage", or "personal and advertising injury" arising out of:

a)  The use of asbestos in constructing or manufacturing any good, product or structure; or

b)  The removal of asbestos from any good, product or structure; or

c)  The manufacture, transportation, storage, service, installation, use, sales, mining, distribution or disposal of asbestos or goods or products containing asbestos; or

d)  Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

e)  Any loss, cost or expense related to any of the above.

3.  Abuse or Molestation

"bodily injury", "property damage" or "personal and advertising injury" arising out of:

a).  The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

b).  The negligent:
    i.    Employment;
    ii.   Investigation;
    iii.  Supervision;
    iv..  Reporting to the proper authorities, or failure to so report; or
    v.    Retention;
    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

4.  Communicable Disease / Sexual Action

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the:

a)  Transmission, actual or alleged, of a communicable disease by any insured including but not limited to Acquired Immune Deficiency Syndrome (AIDS);

b)  Failure to perform services which were either intended to or assumed to prevent communicable diseases or their transmission to others; or

c)  Sexual action, including but not limited to any verbal or nonverbal communication, behavior or conduct with sexual connotations or purposes, whether for sexual gratification, discrimination, intimidation, coercion or other purpose, regardless of whether such action is alleged to be intentional or negligent.

5   Professional Services

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering or failure to render any professional service.

6   Athletic Participants

"Bodily injury", "property damage", or "personal and advertising injury" to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature.

7.  Lead

"Bodily injury", "property damage", or "personal and advertising injury" arising out of exposure to, inhalation of, or ingestion of lead or any substance or matter containing lead or the residue of lead.

8.  Cross Suits

The liability of any Named Insured for any "bodily injury", "property damage", or "personal and advertising injury" which is sustained by or occurs to any Named Insured.

9   Sulfates

Any claim based in whole or in part for bodily injury or property damage which was. directly or indirectly. based upon or contributed to in whole or in part. arising out of. resulting from. or in any manner related to exposure to or the absorption of sulfates. whether such sulfates are in a pure form or were combined with any other chemical or material.

10.   Chromated Copper Arsenate (CCA)

Any loss or liability. including  but not limited to settlements. judgments. costs  charges. expenses. costs of investigations. or the fees of the attorneys. experts  or consultants arising out of or in any way related. either directly or indirectly. to:

   a.   Chromated copper arsenate. chromated copper arsenate products. chromated copper arsenate-containing materials or products  including but not limited to manufacturing  use. sale. installation. removal or distribution activities:

   b.   Exposure to, testing for. monitoring of. cleaning up. removing. containing or treating of chromated copper arsenate. chromated copper arsenate products. chromated copper arsenate-containing materials or products.

   c.   Any obligation to investigate. settle or defend. or indemnify any person against any claim or "suit" arising out of. or related in any way. either directly or indirectly. to chromated copper arsenate. chromated copper arsenate products. chromated copper arsenate-containing materials or products.

11.   Fire Retardant Treated (FRT) Wood
Any loss or liability. including. but not limited to settlements. judgments. costs. charges. expenses. costs of investigations. or the fees of the attorneys, experts. or consultants arising out of or in any way related. either directly or indirectly. to:

   a.   Fire Retardant Treated Wood. Fire Retardant Treated Wood products. Fire Retardant Treated Wood containing materials or products. including but not limited to manufacturing, use. sale. installation. removal or distribution

activities:

   b.   Exposure to. testing for. monitoring of. cleaning up. removing, containing or treating of Fire Retardant Treated Wood. Fire Retardant Treated Wood products. Fire Retardant Treated Wood -containing materials or products:

   c.   Any obligation to investigate. settle or defend. or indemnify any person against any claim or "suit" arising out of. or related in any way. either directly or indirectly. to. Fire Retardant Treated Wood  Fire Retardant Treated Wood products. Fire Retardant Treated Wood -containing materials or products.

12.   Silica. Silica Dust Or Mixed Dust

   a.   (1).  "bodily injury". "property damage" or medical expenses of any type arising out of the inhalation. ingestion. physical exposure to. absorption of. or toxic substances from silica. silica dust or "mixed dust" in any form. or from any goods  products or structures containing silica. silica dust or "mixed dust"  in any form. or

      (2).  "property damage" or devaluation of property arising from any form of silica. silica dust or "mixed dust". in any form.

regardless of whether any other cause. event, material or product contributed concurrently or in any sequence to any such injury or damage

   b.   any loss. cost or expenses arising out of
      (1).  the existence of silica. silica dust or "mixed dust". in any form. in any occupancy. structure  or construction. or
      (2).  goods. products or structures containing silica. silica dust or "mixed dust". in any form·

   c.   any loss. cost or expenses arising out of :
      (1).  the manufacture. sale. transportation  distribution, use. installation handling or storage of silica. silica dust or "mixed dust". in any form. or
      (2).  the abating. testing for. monitoring.

EXHIBIT 1

22 of 54

cleaning up, removing. containing. treating. detoxifying. neutralizing, remediating or disposing of, or in anyway responding to or assessing the effects of silica. silica dust or "mixed dust". in any form. or

(3).  any supervision. instructions. recommendations. requests warnings or advice given or which should have be given in relation to silica, silica dust or "mixed dust". in any form,

by any insured or by any other person or entity.

"Mixed dust" includes any dust particles from quartz. metallic or fibrous mineral

E.    SECTION V – DEFINITIONS is amended as follows:

1    "Employee" includes a "leased worker" and a "temporary worker".

2.    Paragraph 19. "Temporary worker" is amended as follows:

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term work load conditions. "Temporary worker" includes casual labor.

Page 4 of 4

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COURSE OF ROOFING OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to, and the company shall have no duty to defend:

1.  "property damage" to any building or structure or to any property within such building or structure resulting from, caused by, or arising out of water (water includes rain, hail, sleet, or snow).

2.  consequential damages, including loss of use, resulting from such "property damage" described above.

This exclusion does not apply to the "products-completed operations hazard".

ANF 161 (03/97)

EXHIBIT 1
24 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION — PRIOR COMPLETED OR ABANDONED WORK

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Date:
(If no entry appears above, the Date will be the inception date of the policy to which this endorsement is made part of)

A.   This insurance does not apply and the Company shall have no duty to defend any claim or "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" arising out of "your work":

   1.   completed prior to the date shown in the schedule of this endorsement, or

   2.   abandoned by the insured prior to the date shown in the schedule of this endorsement.

B.   Paragraph 16.a.(2).(c) of SECTION V - DEFINITIONS is deleted in its entirety and replaced by the following:

When that part of the work done at a job site has been put to its intended use by any person or organization.

C.   As used in this endorsement "abandoned" means: the failure to provide labor, materials or services for a period of ninety (90) days, despite the work set forth in the controlling construction project not being deemed complete by the Owner.

ANF 164 (07/05)

## EXHIBIT 1
### 25 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT - EMPLOYER'S LIABILITY EXCLUSION
### (EXCLUSION - BODILY INJURY TO EMPLOYEES - ABSOLUTE)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion e. Employer's Liability of item 2. Exclusions, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION I - COVERAGES is replaced by the following:

e.    Employers Liability

"Bodily Injury" to:

(1)    An "employee" or "temporary worker" of any insured arising out of and in the course of:

(a)    Employment by any insured; or

(b)    Performing duties related to the conduct of an insured's business; or

(2)    The spouse, child, parent, brother of sister of that "employee" or "temporary worker" as a consequence of paragraph (1) above.

This exclusion applies:

(1)    Whether an insured may be liable as an employer or in any other capacity; and

(2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ANF 168 (07/99)

EXHIBIT 1
26 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

Condition 4. Other insurance of SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS is deleted in its entirety and is replaced by the following:

4.  Other Insurance

    a.  Primary Insurance

        This insurance is primary except when b. below applies.

    b.  Excess Insurance

        This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

        (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for your work.

        (2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner,

        (3) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner.

        (4) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion g. of Section I – Coverage A – Bodily

Injury And Property Damage Liability, or

(5) That is valid and collectible insurance available to you under any other policy.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's right against all those other insurers.

When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance, and

(2) The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

ANF 170 (04/00)

EXHIBIT 1
27 of 54

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION – MOLD

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1  "Bodily injury", "property damage", or "personal and advertising injury" arising out of, resulting from, or caused or contributed to by any fungus, mildew or mold or exposure to any fungus, mildew, or mold, or

2.  The costs of abatement, mitigation, removal or disposal of any fungus, mildew or mold.

This exclusion also applies to:

1.  Any supervision, instructions, recommendations, warnings or advice given or which should have been give in connection with the above, and

2.  Any obligation to share damages with or repay someone else who must pay Damages because of such injury or damage, either in equity or in tort

3.  The duty to defend or pay sums which may be owned under the Supplementary Payments provisions of the policy.

ANF 172  (01/01)

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage Read the entire policy carefully to determine rights duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies We will have the right and duty to defend the insured against any "suit" seeking those damages However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

EXHIBIT 1

29 of 54

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

EXHIBIT 1

30 of 54

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by or rented or loaned to, any insured. However this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

(ii) "Bodily injury" or "property damage" for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

    © ISO Properties, Inc., 2003

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

### g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

### i. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### j. Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2003 CG 00 01 12 04

EXHIBIT 1

32 of 54

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises including the contents of such premises rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement"

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers

 © ISO Properties, Inc., 2003 CG 00 01 12 04

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

~~COVERAGE C MEDICAL PAYMENTS~~

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

© ISO Properties, Inc., 2003

EXHIBIT 1

35 of 54

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

### SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

            © ISO Properties, Inc., 2003                   □

## EXHIBIT 1

### 36 of 54

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds but only with respect to their duties as your officers or directors. Your stockholders are also insureds but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds but only with respect to their duties as trustees.

2. Each of the following is also an insured.

a. Your "volunteer workers" only while performing duties related to the conduct of your business or your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company)

b. Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A;** and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

#### b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

  (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

  (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

  (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

  (d) If the loss arises out of the maintenance or use of aircraft "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies.

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters For the purposes of this definition,

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means.

a. A contract for a lease of premises. However that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement.

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property, and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered,

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto"

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads.

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

© ISO Properties, Inc., 2003

(1) Equipment designed primarily for:

  (a) Snow removal;

  (b) Road maintenance, but not construction or resurfacing; or

  (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it

For the purposes of this insurance electronic data is not tangible property

As used in this definition electronic data means information facts or programs stored as or on, created or used on, or transmitted to or from computer software including systems and applications software hard or floppy disks, CD-ROMS tapes drives cells, data processing devices or any other media which are used with electronically controlled equipment

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent, or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

  **b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

EXHIBIT 1
43 of 54

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

EXHIBIT 1
44 of 54

POLICY NUMBER: 35-10122439

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM | or  PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

APPLICATION OF ENDORSEMENT (Enter below any limitations on the application of this endorsement. If no limitation is entered the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. PER CLAIM BASIS. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

Copyright, Insurance Services Office, Inc., 1994

2. PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

 Copyright, Insurance Services Office, Inc., 1994   CG 03 00 01 96   □

EXHIBIT 1
46 of 54

POLICY NUMBER:                                          COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

Description of your work:

Construction management for a fee

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

EXHIBIT 1
47 of 54

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment or

(c) Employment-related practices, policies acts or omissions, such as coercion demotion evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to.

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment or

(c) Employment-related practices, policies acts or omissions, such as coercion, demotion, evaluation reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

EXHIBIT 1
48 of 54

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

Description and Location of Operation(s).

1    ALL OPERATIONS AT LOCATIONS AT WHICH THE INSURED WAS AT ANY TIME COVERED UNDER A WRAP-UP PROGRAM  AND

2.   OPERATIONS AT ANY LOCATION FOR OR RELATED TO THE INSURED'S WORK UNDER A WRAP-UP PROGRAM.

(If no entry appears above  information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2. Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages)

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved

This exclusion applies whether or not the consolidated (wrap-up) insurance program:
(1)  Provides coverage identical to that provided by this Coverage Part:

(2)  Has limits adequate to cover all claims; or

(3)  Remains in effect.

CG2154A  7/2005

EXHIBIT 1
49 of 54

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 9. of the Definitions Section is replaced by the following:

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2004

EXHIBIT 1
51 of 54

IL 01 42 09 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OREGON CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following.

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The term "spouse" is replaced by the following

Spouse or individual who is in a domestic partnership recognized under Oregon law

B. Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the

1. Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

C. With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Oregon law, who is a resident of your household, including a ward or foster child.

© ISO Properties, Inc., 2007

EXHIBIT 1
52 of 54

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added

This insurance does not apply to

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism"

B. The following definitions are added

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable and includes but is not limited to "bodily injury" "property damage" "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act: and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007  □

EXHIBIT 1

53 of 54

POLICY NUMBER: 36-10122439        COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

Description of your work:

    ANY AND ALL OPERATIONS AND CROSS SUITS UNDER LICENSE# 156137
    FOR ELEET CORP

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

EXHIBIT 1

54 of 54

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

Description of your work:

- New construction of a dwelling and work within, or on, the premises of a dwelling prior to the certificate of
  occupancy of the owner, regardless of whether the dwelling is a custom home or the dwelling is
  built as part of a tract or a multi-dwelling development:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as
applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed opera-
tions hazard" and arising out of "your work" shown in the Schedule.

CG 21 34 NR 01 87          Copyright, Insurance Services Office, Inc. 1986          Page 1 of 1          □

I HEREBY CERTIFY THAT THE FORG

IS A TRUE COPY OF THE ORIGINAL TH

1

2

3

4

5

6

7

8              IN THE CIRCUIT COURT OF THE STATE OF OREGON

9                  FOR THE COUNTY OF LINCOLN

10   XL SPECIALTY INSURANCE           )   Case No.
     COMPANY,                         )
11                                    )   COMPLAINT
                Plaintiff,            )
12                                    )   (Breach of Contract, Negligence)
          vs.                         )
13                                    )   Amount in Controversy: $624,191.93
     VITEK CONSTRUCTION, LLC,         )   Filing fee due pursuant to ORS 21.160 (1)(c)
14   O'HALLORAN CONSTRUCTION, and     )
     DOES 1 through 25, inclusive,    )   DEMAND FOR JURY TRIAL
15                                    )
                                      )
16              Defendants.           )

17

18       COMES NOW, Plaintiff XL Specialty Insurance Company ("XL") and alleges as

19   follows.

20                        PARTIES AND BACKGROUND

21                                      1.

22       Plaintiff XL is a Delaware corporation with its principle place of business in Stamford

23   Connecticut.  XL is an insurance company authorized to do business and doing business in the

24   State of Oregon.  At all relevant times, XL maintained in full force and effect a policy of

25   insurance numbered 63A6000925-01 covering ISE Properties Inc., DBA: West Coast Inn ("West

26   Coast Inn").

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

99 1

EXHIBIT 2
1 of 8

2.

West Coast Inn operates a three story Inn building, commonly known as an "EconoLodge," located at 1713 NW 21st Street, Lincoln City OR. West Coast Inn is not a party to this action.

3.

Defendant Larry O'Halloran, dba O'Halloran Construction ("O'Halloran") is an individual who resides and does business in Oregon. Plaintiff is informed and believes and based thereon alleges that O'Halloran is and at all relevant times was a contractor licensed by the state of Oregon under license number 184438.

4.

Plaintiff is informed and believes and based thereon alleges that Defendant Vitek Construction LLC ("Vitek") is a Limited Liability Company authorized to do business and doing business in Oregon. Plaintiff is informed and believes and based thereon alleges that Vitek is a contractor licensed by the state of Oregon under license number 191601.

5.

On or about November 14, 2010, West Coast Inn contracted with Defendant O'Halloran to install a new roof on the West Coast Inn building located at 1713 NW 21st Street, Lincoln City, Oregon. The Contract provided for a 15 year warranty on materials, and a five year warranty on workmanship. A true and correct copy of the Contract is attached hereto as Exhibit 1.

6.

Plaintiff is informed and believes and based thereon alleges that O'Halloran subcontracted some or all of the roofing work to Defendant Vitek.

7.

Plaintiff is informed and believes and based thereon alleges that O'Halloran and Vitek are the agents, employees, supervisors or representatives of each other.

/ / /

Page 2 – COMPLAINT

99 I

EXHIBIT 2
2 of 8

1                                         8.

2       Plaintiff is informed and believes and based thereon alleges that on or about November

3 16, 2010, O'Halloran and Vitek installed a Poly Vinyl Chloride (PVC) single ply roof upon the

4 West Coast Inn building. The installation was improper, defective, below the standard of care,

5 and in violation of the contract provisions. In particular, the installation utilized dissimilar and

6 incompatible materials, the workmanship utilized inadequate fasteners and fastening methods to

7 secure the roof to the structure, the roof was improperly installed upon the structure, allowing it

8 to fail.

9                                           9.

10       On or about March 12, 2012, the roof blew off in a moderate wind, causing damage to the

11 structure and interior of the West Coast Inn. Plaintiff is informed and believes and based thereon

12 alleges that local codes, to which the roof was to be installed, required that the roof be able to

13 withstand winds of at least 105mph. Plaintiff is informed and believes and based thereon alleges

14 that the roof actually failed in wind speeds of less than 55.2mph.

15                                       10.

16       West Coast Inn suffered damages to its building and business as a result of the actions of

17 O'Halloran and Vitek. West Coast Inn filed an insurance claim, and XL paid policy benefits to

18 West Coast Inn in the approximate amount of $624,191.93, a more precise sum to be presented

19 at trial.

20                                       11.

21       In that XL paid policy benefits to West Coast Inn, it is subrogated to the interests of West

22 Coast Inn, and stands in the shoes of West Coast Inn for the purposes of bringing this lawsuit.

23 ///

24 ///

25 ///

26 ///

Page 3 – COMPLAINT

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

991
EXHIBIT 2
3 of 8

## FIRST CLAIM FOR RELIEF

### (Against Defendant O'Halloran)

### COUNT I

#### (Breach of Contract)

For Count I of their claim for relief against Defendant O'Halloran, Plaintiff alleges as follows:

12.

Plaintiff re-alleges paragraphs one through eleven, above, as well as the Contract attached hereto as Exhibit 1.

13.

Under the Contract, O'Halloran agreed to property install roofing, using the appropriate standard of care, in accordance with local codes, to be permitted and inspected by the Lincoln City Building Department.

14.

Under the Contract, O'Halloran agreed to warrant the roof for 15 years, and warrant workmanship for five years.

15.

Plaintiff is informed and believes and based thereon alleges that West Coast Inn paid O'Halloran all amounts due under the contract, and did not breached the contract in any manner.

16.

O'Halloran breached the contract in the following respects:

a)    By failing to adequately supervise the work of Vitek;

b)    By failing to install the roof materials adequately;

c)    By failing to fasten the roof materials adequately;

d)    By failing to warrant the workmanship for five years;

e)    By failing to warrant the roof materials for 15 years;

Page 4 – COMPLAINT

1     f)     By failing to build and/or supervise construction of the roof consistent with

2          applicable building codes;

3     g)     By failing to provide his services as expeditiously as is consistent with

4          professional skill and care and the orderly progress of the construction on the

5          West Coast Inn; and

6     h)     By performing his work in a manner that resulted in the defects alleged above.

7

COUNT II

8

(Negligence)

9     For Count II of its claim for relief against Defendant O'Halloran, Plaintiff alleges as

10 follows.

11

17.

12     Plaintiff re-alleges paragraphs one through sixteen, above, as well as the Contract

13 attached hereto as Exhibit 1.

14

18.

15     As a result of his role in providing services to West Coast Inn, and independent of his

16 duties under any agreements, O'Halloran owed West Coast Inn a duty to perform his work in a

17 good and workmanlike manner, in accordance with industry standards and codes, as well as local

18 building codes.

19

19.

20     O'Halloran breached his duties to West Coast Inn in respects alleged in paragraph 16

21 above in a manner that resulted in physical damage to property and other damages.

22

20.

23     Plaintiff paid policy benefits to West Coast Inn as a result of the damages caused by

24 defendants, and each of them. In so doing, Plaintiff became the subrogee of West Coast Inn and

25 stands in its shoes with regard to recovering damages to the extent of policy benefits paid.

26 / / /

Page 5 – COMPLAINT

Theuell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

99 I

EXHIBIT 2
5 of 8

1          SECOND CLAIM FOR RELIEF

2          (Against Vitek Construction LLC)

3                    COUNT I

4                  (Negligence)

5      For Count II of its claim for relief against Defendant Vitek, Plaintiff alleges as follows.

6                     21.

7      Plaintiff re-alleges paragraphs one through twenty, above, as well as the Contract

8  attached hereto as Exhibit 1.

9                     22.

10     As a result of its role in providing services to West Coast Inn under contract with

11 O'Halloran, and independent of its duties under any agreements, Vitek owed West Coast Inn a

12 duty to perform its work in a professional manner, in accordance with industry standards and

13 codes, as well as local building codes.

14                    23.

15     Vitek breached its duties to West Coast Inn in respects alleged in paragraph 16 (b)

16 through (h) in a manner that resulted in physical damage to property and other damages.

17                    24.

18     Plaintiff paid policy benefits to West Coast Inn as a result of the damages caused by

19 defendants, and each of them. In so doing, Plaintiff became the as subrogee of West Coast Inn

20 and stands in its shoes with regard to recovering damages to the extent of policy benefits paid.

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

Page 6 – COMPLAINT

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

991

EXHIBIT 2
6 of 8

1    WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants as

2    follows:

3        1.    For the sum of $624,191.93 and for other damages representing policy benefits

4              paid to date, and which may increase with the passage of time;

5        2.    For Plaintiff's costs, disbursements, and interest;

6        3.    For Plaintiff's reasonable attorney fees allowed under ORS 20.096 or as otherwise

7              allowed by contract or law; and

8        4.    For such other relief the Court deems just and equitable.

9    DATED this 13th day of March, 2014.

10                                  THENELL LAW GROUP, P.C.

11

12

13            By: *Maribeth T. Bonner* #062060

14                 Daniel E. Thenell, OSB #971655
                   Email: dan@thenelllawgroup.com
15                 Of Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

Page 7 – COMPLAINT

Thenell Law Group, P.C.
12909 SW 68th Pkwy., Suite 320
Portland, Oregon 97223
Telephone: (503) 372-6450
Facsimile: (503) 372-6496

99 I

EXHIBIT 2
7 of 8

11/24/2010                               Gmail - new roof contract

Gmail                                    Scott Jones <iamforeverblessed@gmail.com>
                          Sergio        503 - 857 - 7355

new roof contract (Sub)

1 message

ohalloranlk@frontier.com <ohalloranlk@frontier.com>          Mon, Nov 22, 2010 at 6:34 PM
To: iamforeverblessed@gmail.com

O'Halloran Construction            Revised

Larry O'Halloran                   Roof      revised 11-22-10
317 SW Filbert St.                 EST.
McMinnville, Or. 97128                     00          clm. 2012-8036-6
CCB# 184438                        $27,800,
971-241-9360

Project Description and invoice:  West Coast Inn
                                  1713 NW 21 Street, Lincoln City Or 97367

*Remove all 3 layers of existing roofing. Dispose of all debris.

* Re-roof with Versico PVC single ply membrane, (60 mill) replace all
   vents with new roof vents.

* All work will be approved and inspected by Lincoln City Building Department.

* Your new roof comes with a 15 year Manufacturers Warranty; and a 5 year Warranty on
   workmanship.
* The PVC membrane comes in 6 ft. and 10 ft. rolls. We always minimize our seams, and will do
   so on your project as well.
* All seaming is self adhesive and will be torched together.
* Curbing will be built from 2x4's and 1/2 inch plywood, nailed over the existing roof sheeting to
   help creating proper drainage.
* Versico material has already been ordered and will be delivered within a week.
* We will watch the weather and will begin the project when there is a 3 day window of good
   weather.
* Completion time is about 5 working days from beginning of project.
* Due to the rainy, winter season and the condition of the existing roof, "Time is of the Essence"
   the (weather permitting) project must be completed no later than December 15th to avoid more
   damage to building.
* We don't expect any additional requirements that could affect price due to Lincoln City
   Building Department.
* Contract and any changes on part of West Coast Inn, and O'Halloran Construction must be
   made in writing by both In-Joo Cho and Larry O'Halloran.

Total price $ 27,800.00

Down payment received on 11-18-10    $ 12,350.00

Balance due upon completion  $ 15,450.00

Thank you, Larry O'Halloran

https://mail.google.com/mail/u/0/?ui=...

Exhibit 1    1/2
Page 1 of 1    EXHIBIT 2
8 of 8

CIRCUIT COURT

FILED_____ RECEIVED __✓__

MAR 11 2014

AT_____O'CLOCK_____M
BY_____

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LINCOLN

| | |
|---|---|
| ALPHA-C INCORPORATED a/k/a ISE PROPERTIES, INC. d/b/a WEST COAST INN, | Case No. 140772 |
| Plaintiff, | COMPLAINT & JURY TRIAL DEMAND (Negligence) |
| vs. | Prayer: $110,000.00 |
| LARRY O'HALLORAN CONSTRUCTION, LLC, an Oregon limited liability corporation, VITEK CONSTRUCTION, LLC, an Oregon limited liability corporation, | NOT SUBJECT TO MANDATORY ARBITRATION |
| Defendants. | Fee Authority: ORS 21.160(1)(C) |

For its Complaint, Plaintiff alleges as follows:

1.

~~At all material times herein, Plaintiff was an Oregon Corporation with its principal place~~ of business in Lincoln County, Oregon, that owned and operated an Econo Lodge hotel located in Lincoln City, Oregon (referred to hereafter as the "Econo Lodge").

2.

At all material times herein, Defendant Larry O'Halloran Construction, LLC ("O'Halloran"), was an Oregon limited liability corporation based in McMinnville, Oregon, and a licensed Oregon contractor. Defendant O'Halloran performed and/or controlled some or all of the remodeling and construction work at the Econo Lodge that forms the basis of this Complaint.

3.

At all material times herein, Defendant Vitek Construction, LLC ("Vitek"), was an Oregon limited liability corporation based in McMinnville, Oregon, and a licensed Oregon

Page 1 -   COMPLAINT

EXHIBIT 3
1 of 5

WHIPPLE & DUYCK, P C
Attorneys at Law
1500 SW First Ave  Suite 1170
Portland, OR 97201
503 222 6004
503 222 6191

1   contractor.  Defendant Vitek performed and/or controlled some or all of the remodeling and

2   construction work at the Econo Lodge that forms the basis of this Complaint.

3                                              4.

4        All or substantially all of the acts and omissions alleged herein occurred in Lincoln City,

5   Oregon.

6                                              5.

7        On or around November 15, 2010, Plaintiff hired Defendant O'Halloran to replace the

8   roof at its Econo Lodge hotel.

9                                              6.

10       Thereafter Defendant O'Halloran and Defendant Vitek, a subcontractor, removed the

11  Econo Lodge's existing roof, and re-roofed the Econo Lodge.

12                                             7.

13       Defendants completed their re-roofing work on or around February 2, 2011.

14                                             8.

15       On or around March 14, 2012, the roof of the Econo Lodge failed, causing extensive

16  flooding and water damage throughout all three levels of the Econo Lodge.

17                                             9.

18       Defendants were responsible for the quality of all labor and materials used in the

19  construction and re-roofing at the Econo Lodge and for the work their agents

20                                             10.

21       Defendants were responsible to ensure that the Econo Lodge was re-roofed so as to be

22  free from defects and in a manner so as not to leak, fail or cause property damage.  Defendants

23  were also responsible for ensuring the Econo Lodge was remodeled and repaired in a

24  weatherproof and workmanlike manner.

25  ///

26  ///

Page 2 -   COMPLAINT

EXHIBIT 3
2 of 5

WHIPPLE & DUYCK, P.C
Attorneys at Law
1500 SW First Ave., Suite 1170
Portland, OR 97201
503 222 6004
503 222 5191

11.

The resultant roof failure, leaks, water intrusion and property damage at the Econo Lodge are the result of Defendants' defective construction, remodeling and repair, and non-compliance with industry standards, manufacturer specifications and guidelines, and other applicable specifications, including, but not limited to, the following:

1. Failure to properly install and inspect the roof;

2. Failure to properly install and inspect the roofing materials;

3. Failure to follow the proper nail pattern when installing the roof;

4. Failure to properly nail the roofing materials to the structure;

5. Failure to perform work in a reasonable and workmanlike manner;

6. Such other specifications of negligence to be alleged upon completion of discovery.

12.

The roof failure, leaks, water intrusion and property damage at the Econo Lodge caused by the above defects rendered portions of the Econo Lodge unusable for a period of time. Extensive repairs were necessary to correct the roof failure, leaks, water intrusion and property damage and to minimize the real, substantial and imminent risk of further property damage and loss.

13.

As a result and the conduct set forth above, Plaintiff suffered substantial uninsured losses, and is entitled to recover damages in an amount to be proven at trial and currently estimated to be $110,000 in the following specifics: payment of a $5,000 deductible towards repair work; payment for "code improvement" repairs estimated at $20,000; public adjuster costs estimated at $85,000.

14.

Plaintiff is also entitled to post judgment interest at a rate of nine percent (9%) per annum on any award.

Page 3 -   COMPLAINT

EXHIBIT 3
3 of 5

WHIPPLE & DUYCK, P.C.
Attorneys at Law
1500 SW First Ave, Suite 1170
Portland, OR 97201
503 222 6004
503 222 6191

FIRST CLAIM FOR RELIEF

(Negligence – All Defendants)

15.

Plaintiff re-alleges and incorporates paragraphs 1 through 12 above as if fully set forth herein.

16.

Each of the Defendants had an independent duty to ensure that the Econo Lodge was remodeled and re-roofed in a weatherproof, workmanlike manner, in compliance with all industry and manufacturer standards and specifications and to ensure that the Econo Lodge roof did not fail, leak, or otherwise cause property damage.

17.

Defendants knew, or reasonably should have known, that failure to use reasonable care and comply with applicable plans, industry and manufacturer standards and specifications in overseeing, directing and undertaking the re-roofing and repair of the Econo Lodge would cause damage to the Econo Lodge as described in paragraphs 11 through 12, supra.

18.

Plaintiff relied on Defendants to perform their duties with reasonable care, and in compliance with all applicable plans, regulations and industry and manufacturer standards and specifications.

19.

Defendants breached their duty to Plaintiff by failing to use reasonable care and failing to comply with all applicable plans and industry and manufacturer standards and specifications in overseeing, directing and undertaking the re-roofing and repair of the Econo Lodge.

20.

Defendants performed their work negligently by the conduct described in paragraph 11 above.

Page 4 -    COMPLAINT

EXHIBIT 3
4 of 5

WHIPPLE & DUYCK, P.C.
Attorneys at Law
1500 SW First Ave., Suite 1170
Portland, OR 97201
503.222.6004
503.222.9191

1                                              21.

2        As a foreseeable, direct and proximate result of Defendants' negligence, Plaintiff has

3  suffered damages and is entitled to recover those damages and interest as set forth above in

4  paragraphs 13 through 14.

5        WHEREFORE, Plaintiff prays for the following relief:

6        A.    Economic damages in an amount to be proven at trial not to exceed $110,000;

7        B.    Interest at a rate of nine percent (9%) per annum;

8        C.    Plaintiff's costs and disbursements incurred herein; and

9        D.    For any other appropriate relief that the Court deems just and equitable.

10       DATED this _11_ day of March, 2014.

11

12                                    WHIPPLE & DUYCK, P.C.

13

14                              By: _____
                                        Daniel L. Duyck, OSB #972529
15                                      dduyck@whippleduyck.com
                                        Eric D. Wilson, OSB#044556
16                                      ewilson@whippleduyck.com
                                        Of Attorneys for Plaintiff

17                                    Trial Attorney: Daniel L. Duyck

18

19

20

21

22

23

24

25

26

Page 5 -   COMPLAINT                  EXHIBIT 3              WHIPPLE & DUYCK P C
                                      5 of 5                    Attorneys at Law
                                                           1500 SW First Ave   Suite 1170
                                                               Portland  OR 97201
                                                                 503 222 6004
                                                                 503 222 6191

# EXHIBIT D

1

2

3

4

5

6

UNITED STATES CIRCUIT COURT
FOR THE STATE OF OREGON - MULTNOMAH COUNTY

7

VITEK CONSTRUCTION, LLC,

8                Plaintiff,

9    vs.

10

NAVIGATORS INSURANCE COMPANY, a
11   foreign corporation,

12                Defendant.

No. 14CV07180

**NOTICE OF APPEARANCE**

13   TO:        The Clerk of the Court

14   AND TO:     All parties and their counsel of record,

15        **PLEASE TAKE NOTICE** that the undersigned hereby appear on behalf of Defendant

16   Navigators Insurance Company (hereinafter "Navigators") in the above-captioned matter,

17   without waiving of the question or defense of:

18        1) lack of jurisdiction over the subject matter;

19        2) lack of jurisdiction over the person;

20        3) there may be another action pending between the same parties for the same cause;

21        4) insufficiency of summons or process;

22        5) insufficiency of services of summons or process;

23        6) Plaintiff does not have the legal capacity to sue;

24

NOTICE OF APPEARANCE - 1
S:\FILES\O'Halloran, Larry 14052\Pleadings\140624 Notice of Appearance -
MULTNOMAH.doc

LETHER & ASSOCIATES, PLLC
1848 WESTLAKE AVE N., SUITE 100
SEATTLE, WASHINGTON 98109
P: (206) 467-5444  F: (206) 467-5544

1        7) the party asserting the claim is not the real party in interest;

2        8) the action may not have been commenced within the time limited by the applicable

3  statute;

4        9) failure to state a claim upon which relief may be granted;

5        10) failure to join a necessary party under Rule 29; and

6        11) improper venue.

7        In addition to the foregoing, Navigators specifically reserves the right to seek

8  adjudication of any and all insurance coverage issues in the United States District Court of

9  Oregon, which has jurisdiction over the subject matter and parties to the coverage action, and

10 which is the proper venue for adjudication of those issues.

11       You are hereby directed to serve all future pleadings or papers accepting process upon the

12 undersigned attorneys at the address stated below.

13

14       DATED this 1st day of July, 2014.

15

16                        Thomas Lether, OSB #101708
                            1848 Westlake Ave N., Suite 100
                            Seattle, WA 98109

17                        Telephone: (206) 467-5444
                            Facsimile: (206) 467-5544

18                        tlether@letherlaw.com
                          *Attorneys for Plaintiff The Navigators*

19                        *Insurance Company*

20

21

22

23

24

NOTICE OF APPEARANCE - 2
S:\FILES\O'Halloran, Larry 14052\Pleadings\140624 Notice of Appearance -
MULTNOMAH.doc

                            LETHER & ASSOCIATES, PLLC
                        1848 WESTLAKE AVE N., SUITE 100
                          SEATTLE, WASHINGTON 98109
                     P: (206) 467-5444  F: (206) 467-5544

1

## CERTIFICATE OF SERVICE

2        The undersigned certifies that on the date below stated they caused the foregoing to be
served upon the below party(ies) at the address(es) and by the method(s) so indicated.

3

4    Gary G. Norris
1006 NE 3rd St.
Suite A

5    McMinnville, OR 97128
*Attorney for Plaintiff*

6

7    ___    Email
 ☒   USPS

8    ___    ECF Notice
___    Facsimile

9    DATED this 1st day of July, 2014.

10                                  *Hugh Engel*
                          _____
                          Hugh Engel, Paralegal

11

12

13

14

15

16

17

18

19

20

21

22

23

24

NOTICE OF APPEARANCE - 3
S:\FILES\O'Halloran, Larry 14052\Pleadings\140624 Notice of Appearance -
MULTNOMAH.doc

                      LETHER & ASSOCIATES, PLLC
                 1848 WESTLAKE AVE N., SUITE 100
                   SEATTLE, WASHINGTON 98109
              P: (206) 467-5444 F: (206) 467-5544

# EXHIBIT E

1

2

3

4

5

6

7                    UNITED STATES CIRCUIT COURT
8          FOR THE STATE OF OREGON - MULTNOMAH COUNTY

9   VITEK CONSTRUCTION, LLC,                    No. 14CV07180

10          Plaintiff,                          **NOTICE OF REMOVAL**

11   vs.

12   NAVIGATORS INSURANCE COMPANY, a
     foreign corporation,
13
            Defendant.
14

15   TO:        The Clerk of the Court

16   AND TO:    Plaintiff Vitek Construction, LLC and their counsel of record,

17          **NOTICE IS HEREBY GIVEN** that on this day, Defendant Navigators Insurance

18   Company (hereinafter "Navigators") in the above-captioned matter, filed in the United States

19   District Court for the District of Oregon, a Notice of Removal of such action to the United States

20   District Court for the District of Oregon at Eugene Division pursuant to USC § 1441. A copy of

21   the Notice of Removal is attached hereto and served herewith.

22          You are also advised that Navigators, by filing a copy of the Notice of Removal with the

23   Clerk of the Circuit Court for the State of Oregon for the County of Multnomah has affected this

24

NOTICE OF REMOVAL - 1
S:\FILES\O'Halloran, Larry 14052\Pleadings\140623 Notice of Removal -
MULTNOMAH.doc

1    removal in accordance 28 U.S.C. § 1441(a).  Pursuant to 28 U.S.C. § 1441(a), this Court is to no

2    longer proceed with this case unless this case is remanded back to this Court.

3           Finally, the basis for removal is complete diversity of citizenship between the parties and

4    the matter in controversy exceeds the sum of $75,000.00 pursuant to and in accordance with 28

5    U.S.C. § 1332(a)(1).

6

7           DATED this 3rd day of July, 2014.

8
                                    Thomas Lether, OSB # 101708
9                                   1848 Westlake Ave N., Suite 100
                                    Seattle, WA 98109
10                                   Telephone: (206) 467-5444
                                    Facsimile: (206) 467-5544
11                                   tlether@letherlaw.com
                                    *Attorneys for Defendant The Navigators*
12                                   *Insurance Company*

13

14

15

16

17

18

19

20

21

22

23

24

NOTICE OF REMOVAL - 2
S:\FILES\O'Halloran, Larry 14052\Pleadings\140623 Notice of Removal -
MULTNOMAH.doc

LETHER & ASSOCIATES, PLLC
1848 WESTLAKE AVE N., SUITE 100
SEATTLE, WASHINGTON  98109
P: (206) 467-5444  F: (206) 467-5544

1

## CERTIFICATE OF SERVICE

2      The undersigned certifies that on the date below stated they caused the foregoing to be
served upon the below party(ies) at the address and by the method so indicated.

3

4      Gary G. Norris
       1006 NE 3rd St.
       Suite A
5      McMinnville, OR 97128
       *Attorney for Plaintiff*

6
              ___  Email
7              X   USPS
              ___  ECF Notice
8             ___  Facsimile

9      DATED this 3rd day of July, 2014.

10                                          *Hugh Engel*
                                            Hugh Engel, Paralegal
11

12

13

14

15

16

17

18

19

20

21

22

23

24

LETHER & ASSOCIATES, PLLC
1848 WESTLAKE AVE N., SUITE 100
SEATTLE, WASHINGTON 98109
P: (206) 467-5444  F: (206) 467-5544